IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Criminal No. 15-201 |
| | ) | |
| STEVEN R. LAWNICZAK | ) | |

**STEVEN LAWNICZAK'S MEMORANDUM
OF LAW REGARDING RESTITUTION**

Mr. Lawniczak pled guilty to one count of possession of material depicting the sexual exploitation of a minor, a violation of 18 U.S.C. § 2252(4)(B). "Violet" is a child who was sexually abused by her father. Violet's father documented the abuse and shared images with others. The images of her abuse became widely disseminated via the internet. The government has indicated to the defense that one file involving Violet was among the child pornography found in Mr. Lawniczak's possession. Violet is 10 years old, and does not know about the existence of the images that her father disseminated on the internet, or that other people have seen them. Violet has submitted a claim seeking $10,000 in restitution from Mr. Lawniczak based on Violet's projected losses from her "anticipated understanding of the existence of the circulation of images of her sexual abuse." As Violet's projected losses from Mr. Lawniczak's actions are speculative at this juncture, this Court should decline to order restitution.

1

I.   Discussion

18 U.S.C. § 2259 provides that courts must order restitution to any victim of an offense under Chapter 110, pertaining to the "Sexual Exploitation and Other Abuse of Children." Chapter 110 encompasses a wide variety of crimes pertaining to children, including, *inter alia*, the production of child pornography (18 U.S.C. § 2251), the selling, buying, or transfer of a child's custody for purposes of producing child pornography (18 U.S.C. § 2251A), and the possession or distribution of child pornography (18 U.S.C. § 2252).

Section 2259 defines the "losses" that may be recovered under the statute:

(3) Definition – For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for –

> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) attorneys' fees, as well as other costs incurred; and
>
> (F) any other losses suffered by the victim as a proximate cause of the offense."

8 U.S.C. § 2259(b)(3). "The burden of demonstrating the amount of loss sustained by the victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e).

In *Paroline v. United States*, 134 S.Ct. 1710 2014), the United States Supreme Court resolved a split in the circuits, and held that "[r]estitution is . . . proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 1722. *See also United States v. Hardy*, 707 F. Supp. 2d 597 (W.D.Pa. 2010) (finding "that 18 U.S.C. § 2259 *does require* that a victim's losses be proximately caused by the criminal acts of the defendant for restitution to be awarded.") (emphasis added).

The victim requesting restitution in *Paroline* was sexually abused by her uncle when she was eight and nine years old. 134 S.Ct. at 1717. She made a strong recovery after undergoing therapy as a child, but suffered a major setback after she became aware that images of her abuse were being trafficked on the internet. *Id.* She submitted a victim impact statement articulating the fear and trauma she suffers as a result of her awareness of the wide dissemination of the photographs. *Id.* Paroline was one of the individuals who possessed images of the victim. *Id.* Although the victim had no specific knowledge of Paroline's possession of images of her, she claimed that people like him who possessed the images contributed to her trauma. *Id.*

In the context of that claim, the *Paroline* Court recognized that "the victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child-pornography crimes, including possession, assuming the prerequisite showing of factual causation is satisfied." *Id.* at 1722. The necessary

task for the Court was determining the proper standard of causation in fact. *Id*. To that end, the Court provided the following direction:

> [W]here it can be shown both that a defendant possessed a victim's images and that ***a victim has outstanding losses caused by the continuing traffic in those images*** but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses."

*Id*. at 1727 (emphasis added). The Court observed that, in a case like Paroline's, "[t]he amount would not be severe . . ., given the nature of the causal connection between the conduct of a possessor like Paroline and the entirety of the victim's general losses from the trader of her images, which are the product of the acts of thousands of offenders." *Id*. at 1727. In determining the amount of restitution, "it makes sense to spread payment among a larger number of offenders in amounts more closely in proportion to their respective causal roles and their own circumstances so that more are made aware, through the concrete mechanism of restitution, of the impact of child pornography possession on victims." *Id*. at 1729.

In this case, Mr. Lawniczak was convicted of the possession of child pornography. The remaining restitution claim in this case is made on behalf of a child referred to as "Violet." Violet was sexually abused by her father, who documented the abuse with photos and videos. Violet's attorney, Carol Hepburn, has submitted a letter dated August 10, 2016 (hereinafter "8/10/2016 Hepburn Ltr."), accompanied by a forensic psychological evaluation and a declaration in support of her request for restitution. The attorney for Violet retained a clinical

4

psychologist, Dr. Randall Green, to conduct a forensic psychological evaluation for purposes of determining the following: (1) the current status of Violet's psychological functioning; and, (2) anticipating that Violet will learn about the distribution of images of her on the internet, a projection of mental health issues and therapy costs following her discovery of the existence of possession and trafficking of her images. Randall Green, Ph.D, Report of Forensic Psychological Examination (hereinafter "Green Report"), at 1.[1]

### A. The government must prove that Mr. Lawniczak possessed images of Violet in order to show that she is a "victim" entitled to restitution in this case.

Mr. Lawniczak is not alleged to have been involved in the production of the images of Violet's sexual abuse. The documentation offered in support of Violet's restitution request indicates that Violet's father was both the perpetrator of her sexual abuse, and the person who created the images of Violet for purposes of distributing them in the digital market. 8/10/2016 Hepburn Ltr., 4. According to Violet's attorney, it is clear that Mr. Lawniczak "was not involved in the production of Violet's images of sexual abuse." *Id.* at 4. Mr. Lawniczak has not received any information from the government suggesting otherwise.

The government has indicated to undersigned counsel that one (1) file relating to Violet was among the child pornography materials found in Mr. Lawniczak's possession. At this stage, based on the information available to the

---

[1] Counsel will provide this documentation to the Court upon request.

5

defense, Mr. Lawniczak maintains his right to a hearing on the question of whether he actually possessed and viewed images or video of Violet. *See Paroline*, 134 S.Ct. at 1727.

   B. **Even if Mr. Lawniczak in fact possessed and/or viewed a file related to Violet, Violet has not articulated an injury and losses proximately caused by Mr. Lawniczak's actions where she is currently unaware that images of her abuse have been disseminated.**

Assuming that the government can prove that Violet is a "victim" for purposes of applying § 2259, Violet's claim for restitution nonetheless fails to meet *Paroline*'s proximate cause requirement. Violet has not articulated a harm with an attendant loss proximately caused by Mr. Lawniczak, or the larger, unknown group of people who have possessed images of her abuse. Specifically, Violet has not suffered the psychological trauma the *Paroline* Court found to justify the imposition of restitution orders in child pornography possession cases because ***she is not currently aware that images of her abuse have been disseminated***. *See* 8/10/2016 Hepburn Ltr., 2.

Identification of an injury with attendant losses caused by the defendant's child pornography offense is a necessary requirement to ordering restitution to a victim. The *Paroline* Court recognized the psychological harm caused to victims of child pornography offenses stemming from their *awareness* that documentation of their abuse has been disseminated to a wide audience. *See Paroline*, 134 S.Ct. at 1726 ("It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will view in the future images of the sexual abuse she endured"). When

this awareness causes a harm that is separate and distinct from the victim's psychological trauma from the underlying sex offense and is proximately caused by a possessor's actions, restitution for a child pornography victim may be proper.

Violet has not shown that she has suffered a harm from knowing about the dissemination of images of her sexual abuse. Nor has Violet articulated any other compensable harm that could traced to Mr. Lawniczak's conduct. *Possible* counseling needs following a *possible* future traumatic event which may never come to pass have not been "incurred" under § 2259, even if that future harm is likely. For purposes of applying § 2259, "incur" "means 'become liable or subject to.'" *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999) (quoting Webster's Third New Int'l Dictionary 1146 (1986). Unless and until Violet can articulate a harm and attendant losses resulting from the dissemination of files involving her, Violet's attempt to seek restitution from people whose sole connection to her is the possession of those images must fail. *Cf. Laney*, 189 F.3d at 966-67 (noting that where a victim is undergoing therapy for trauma of sexual abuse *and* awareness of dissemination of images of that abuse, future therapy costs that are currently ascertainable may be properly considered in ordering restitution under § 2259).

Violet's restitution claim is an outlier because it rests on the ***eventuality*** that she will at some undetermined point in her lifetime become aware of the distribution of images of her abuse on the internet, and, at that point, suffer trauma compelling her to seek out mental health treatment for the rest of her life. Even if this future discovery is a near certainty, the attendant losses are not at this time

ascertainable. *See* Green Report, 14 ("Because [Violet] does not yet know of their existence, I cannot offer an opinion based upon how she has responded to a discovery that has not yet occurred"). Neither the severity of the psychological trauma of the discovery nor the concomitant need for treatment can be ascertained preceding the event of her discovery. Thus, this restitution request is distinguishable from requests involving a victim who is already aware of the dissemination of files related to her abuse and seeking restitution for past- and future-treatment costs related to the injury caused by the discovery, like the request at issue in *Laney*. 189 F.3d at 967 (noting that the victim "and her family will not 'discover' in the future that they need counseling; they already know that they do"). With respect to restitution requests like the one at issue in *Laney*, a court can be certain that defendant has caused the victim an injury with an associated financial loss, and then project the victim's future counseling needs based on the victim's own experience and need for therapy to date.

Due to the fact that Violet does not yet know about the dissemination of images of her abuse, Dr. Green had to draw upon his experience with other, similarly-situated victims of sexual abuse. *See* Green Report, 14-17 (Dr. Green references his experience with four such individuals, a relatively-small sample size), He then projects Violet's *potential* need for therapy following that discovery. *See id.* at 18-19. Dr. Green noted that his endeavor to project such losses was "***speculative, at best.***" Green Report, 18 ("Projecting actual therapeutic needs years in advance of these developments is, at best, speculative."). This Court cannot order restitution

8

based on Dr. Green's speculation as to potentional, rather than ascertainable, future loss.

Dr. Green's ability to calculate future counseling costs in a case such as this was severely limited due to his lack of information regarding how Violet will react to any future discovery of the dissemination of these images. As Dr. Green noted in his report, the impact of the discovery on Violet will depend on a number of factors, such as Violet's age at the time of the discovery, "the manner in which she discovers [the dissemination], the degree to which she has suppressed trauma memories at the time of her discovery, the environmental support available to her, her own psychosocial and psychosexual maturity, and her coping mechanisms at that time." Green Report, 14. Unless and until this eventuality comes to pass, we cannot know what type of counseling Violet will require or what other losses she may sustain as a result.

The prematurity of this request for restitution is emphasized by Dr. Green's assessment that Violet is currently doing well enough that she does not require regular therapy sessions. According to Dr. Green's clinical evaluation, Violet "appears to be doing reasonably well. I don't think there a [sic] compelling need for regularly scheduled appointments at this time. I do think there is value in maintaining intermittent contact with the therapist with whom she did some solid work in 2014. . . . Depending on what transpires, more sessions might be indicated – or not." Green Report, 17; *see also id.* at 13 (noting that "[w]ith the benefit of therapy and those ameliorating environmental factors, 'Violet' appears to be

9

progressing in her psychosocial development *in a manner better than one may have expected"* (emphasis added)). Given Violet's progress with what appears to have been relatively minimal clinical intervention, Dr. Green's challenging task of determining the scope of treatment and resources she will seek out in the event she discovers the dissemination of images of her abuse was made even more difficult.

If this Court denies Violet's instant request for restitution, she is not without an avenue for seeking restitution from Mr. Lawniczak in the event that she later discovers the dissemination of the images of her and suffers compensable harm as a result. Where a victim's costs are not yet ascertainable at the time of sentencing, 18 U.S.C. § 3664 provides a mechanism for seeking a future order of restitution based on newly-discovered losses stemming from a previously-sentenced defendant's conduct:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. *If the victim subsequently discovers further losses, the victim shall have 60 days after the discovery of those losses in which to petition the court for an amended restitution order.* Such order may be granted upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664(d)(5). To grant Violet's restitution request at this premature stage would thus involve not only a misapplication of § 2259, but also a distortion of § 3664, the proper channel for ordering restitution for losses not ascertainable at the time of sentencing. If courts begin ordering restitution under § 2259 *prior to* a victim's discovery of the dissemination and the attendant trauma, a victim seeking

restitution pursuant to § 3664 *after* discovering the dissemination may have difficulty showing "good cause for the failure to include such losses in the initial claim for restitutionary relief." 18 U.S.C. § 3664(d)(5).

Although counsel for Violet indicates that Violet has obtained restitution orders in seven other cases, undersigned counsel could not find a single federal case in which a child pornography possessor who played no part in the production of the pornography has been ordered to pay restitution to a child victim who does not yet know that her abuser disseminated images of the abuse and articulates no other loss from the dissemination. If *Paroline*'s proximate-cause requirement means anything, it requires that a district court trace some harm suffered by the victim to the child pornography defendant's conduct. *Paroline*, 134 S.Ct. at 1727. Based on the information available today, no such line can be traced to Mr. Lawniczak. Accordingly, this Court should deny Violet's request for restitution.

- **C. In the event that this Court finds that Violet has incurred losses proximately caused by Mr. Lawniczak's conduct, Mr. Lawniczak respectfully requests the opportunity to submit additional briefing and/or argument on the amount of restitution to be ordered.**

While noting that his projection of Violet's future therapy costs "is, at best, speculative," Green Report, 18, Dr. Green estimates a total range of therapy costs of $72,400 to $118,025. *Id.* at 19. Violet's attorney seeks restitution in the amount of $10,000 from Mr. Lawniczak. There are a number of problems with the methodology, or lack thereof, used to reach this restitution amount.

The *Paroline* Court indicated that a number of factors were relevant to a court's determination of the proper amount of restitution in child pornography possession cases:

> At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment.
>
> \* \* \*
>
> [D]istrict courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images . . ., then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved. . . ; whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Paroline*, 134 S. Ct. at 1727–28.

The *Paroline* Court contemplated a need to disaggregate losses sustained as a result of the initial physical abuse from those from those sustained as a result of people possessing and distributing images of the physical abuse. *See id.* at 1722 (noting that "[c]omplications may arise in disaggregating losses sustained as a result of the initial physical abuse, but those questions may be set aside for present purposes"). Following *Paroline*, courts have held favored a "disaggregation" approach in which future therapy losses attributable to a mere possessor are

distinguished from future therapy losses attributable to the victim's underlying sexual abuse. *See United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015) (holding that *Paroline* requires district courts to disaggregate loss caused by original abuser and loss caused by distributors and possessors, and that the latter category of persons "should not be required to pay for losses caused by the original abuser's actions"); *United States v. Dunn*, 777 F.3d 1171, 1181-82 (10th Cir. 2015) ("We think it inconsistent with 'the bedrock principle that restitution should reflect the consequences of the defendant's own conduct' to hold Mr. Dunn accountable for those harms initially caused by Vicky's abuser"); *United States v. Miner*, 617 F. App'x 102, 103-104 (2d Cir. 2015) (noting, with approval, that "[t]he district court here explicitly found that "the general losses sought by the Government for J_Blonde and Andy are sufficiently disaggregated from the harm caused by their respective initial abusers to satisfy *Paroline*'s proximate causation requirement"); *United States v. Rogers*, 758 F.3d 37, 39-40 (1st Cir. 2014) (approving of district court's approach in calculating restitution where it "first limited the losses to general losses from 'continuing' traffic in Vicky's images from the period from when defendant had viewed them" and then "distinguished the future therapy losses attributable to defendant from the harm resulting from other viewers and from Vicky's therapy needs relating to her father and the difficulty of her relationships with male friends").

As discussed above, neither Violet nor the government can show that Violet has incurred compensable losses caused by the continuing traffic in the victim's

13

images. And Dr. Green's attempt at calculating the future loss is speculative. However, even if Violet's possible future therapy needs could be considered ascertainable, Dr. Green's projected loss amount is unreliable for the following reasons:

- The total potential loss amount includes therapy sessions preceding Violet's future discovery of dissemination of images of her abuse, which would not be proximately caused by Mr. Lawniczak's possession;

- The report assumes a cost of $175-$200 per therapy session, without any documentation supporting that amount;

- The report assumes that Violet will continue therapy for the rest of her life, which is entirely speculative at this juncture;

- The report assumes that Violet will enter a "significant adult relationship," and that she and her partner will seek out a therapist together, due to the impact of the dissemination of images, and estimates that this will costs $15,000 to $30,000;

- The report makes no attempt to disaggregate future therapy costs resulting from the sexual abuse and therapy costs resulting from Violet's eventual knowledge that images of her abuse have been disseminated. Such disaggregation is necessary to determine the proper restitution amount.

*See* Green Report, 18-19.

Even if Dr. Green's figure were reliable, Violet's attorney's request that Mr. Lawniczak be ordered to pay restitution of approximately 10% of Violet's total future therapy costs is unreasonable in light of Mr. Lawniczak's relatively minimal role in causing harm to Violet. Based on the information currently available, it is alleged that Mr. Lawniczak possessed only one file relating to Violet. It is unclear whether there is evidence that he viewed this file, however, he is not alleged to have distributed or produced this file or any other files relating to Violet. Undersigned

14

counsel has no information regarding the amount of prior restitution orders in Violet's case beyond Violet's lawyer's representation that Violet has received seven prior restitution orders. In light of *Paroline*'s command to consider a person's role in the "causal process," a significant portion of Violet's potential future losses should be attributed to Violet's father, the perpetrator of her abuse who also produced and distributed images of her abuse. *See Paroline*, 134 S. Ct. at 1727. Notably, Violet's loss calculation and restitution request make no attempt to disaggregate the amount of loss attributed to Violet's father and the amount of loss attributable to people who merely possessed image(s) of Violet. Based on *Paroline*'s nonexhaustive list of factors relevant in determining the proper amount of restitution, the restitution figure proposed by Violet's attorney is excessive.

In the event that this Court finds that Violet is a "victim" for purposes of § 2259 and has incurred ascertainable losses at this juncture, Mr. Lawniczak requests an opportunity to submit further briefing and a hearing on the issue of the proper amount of restitution.

## CONCLUSION

As Violet does not yet know about the dissemination of images of her abuse, and cannot now articulate compensable losses proximately caused by Mr. Lawniczak's alleged possession of one file related to her, this Court should decline to order restitution at this juncture.

Respectfully submitted,

**s/ Samantha L. Stern**
Samantha L. Stern
Assistant Federal Public Defender