IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.  15-201 |
| ) | |
| STEVEN R. LAWNICZAK ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM
REGARDING RESTITUTION**

AND NOW comes the United States of America, by and through its attorneys, Soo C. Song, Acting United States Attorney for the Western District of Pennsylvania, and Shaun E. Sweeney, Assistant United States Attorney for said District, and files this sentencing memorandum on the issue of restitution.  For the reasons set forth below, the Government requests that the Court order the defendant, Steven R. Lawniczak, to pay restitution in the amount of $7,184 to the victim "Violet."  The Court should order the defendant to pay restitution because he possessed sexual abuse images of the victim and because the victim is going to incur losses caused by the defendant's possession of those images. The amount requested by the government is reasonable in light of the defendant's conduct.

**I.        PROCEDURAL HISTORY**

The defendant was charged in a four-count Indictment on September 9, 2015, with Distribution of Material Depicting the Sexual Exploitation of a Minor (Counts One and Two), and Possession of Material Depicting the Sexual Exploitation of a Minor (Counts Three and Four).  On July 21, 2016, the defendant pled guilty to Count Four pursuant to a plea agreement with the government. Pursuant to the plea agreement, the parties stipulate that the defendant shall pay restitution in an amount to be determined by the Court.  Counsel for the parties have discussed issues pertaining to restitution but have not been able to resolve those issues.

One of the child victims depicted in the images possessed by the defendant is a girl, now

age 10 or 11, who is identified as "Violet" in the exploitation series known as the "At School" series. Violet, through her attorney, has submitted a restitution request pursuant to 18 U.S.C. § 2259. The government will provide the restitution packet to the Court under separate cover under seal. That packet has already been provided to defense counsel.

## II.     RESTITUTION

Under 18 U.S.C. § 2259(a), restitution to child pornography victims is mandatory. A defendant must be ordered to pay "the full amount of the victim's losses," which may include "any costs incurred by the victim" for:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1) and (3). A court may not decline to issue a restitution order because of "the economic circumstances of the defendant" or "the fact that a victim has received, or is entitled to receive, compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4)(B).

### A.     Paroline v. United States

In Paroline v. United States, 134 S.Ct. 1710 (2014), the Court held that all six categories of losses in section 2259(b)(3) require a showing of "proximate causation," which has two components: a factual, causal connection between the offense and the injury (cause-in-fact) and a limitation on recovery for remote damages (proximate cause). Paroline, 134 S. Ct. at 1719.

The defendant in Paroline was convicted of possessing child pornography, including two images of "Amy," the victim in a widely distributed series of child pornography images. Amy

sought approximately $3.3 million in restitution for counseling and lost wages. Paroline contended, and the district court agreed, that Amy could not show that any of her losses were directly attributable to Paroline's offense and that she would have incurred them had he never seen her pictures. Paroline, 134 S. Ct. at 1718. The district court accordingly awarded no restitution. Amy petitioned for a writ of mandamus, pursuant to 18 U.S.C. § 3771(d)(3), arguing that the five enumerated categories of losses in Section 2259(b)(3) contain no proximate causation requirement, and that Paroline was required by statute to pay her for the full amount of her losses. The en banc Fifth Circuit agreed, holding that Paroline should be held liable, jointly and severally, for the full $3.3 million. Id. The Supreme Court rejected the holdings of both lower courts and instead adopted the middle-ground position advanced by the Solicitor General. The Court's central holding was that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general [aggregate] losses." Id. at 1727.

The Supreme Court in Paroline also held that the statute requires proximate cause for all six of the statute's loss categories (including, for example, medical and counseling expenses), and not only for the catchall category of "any other losses suffered by the victim as a proximate result of the offense," 18 U.S.C. § 2259(b)(3)(F). Paroline, 134 S. Ct. at 1720; Id. at 1731 (Roberts, C.J., dissenting); Id. at 1735-36 (Sotomayor, J., dissenting). The Court also held that proximate causation was not at issue on the facts of Paroline because Amy's losses were of the type that one should expect a child-pornography victim to suffer — in that they are both foreseeable results of and within the scope of the risk created by child pornography production, distribution, and possession. Id. at 1722 (op. of the Court); Id. at 1731 (Roberts, C.J., dissenting); Id. at 1736 (Sotomayor, J., dissenting).

3

As for cause-in-fact, recognizing that child-pornography victims' injuries result from an "atypical causal process," the Court rejected the traditional but-for causation standard advocated by Paroline. Id. at 1722 (op. of the Court). Instead, the Court in essence adopted the government's aggregate-causation theory, based on tort law, that when multiple causes combine to produce an event and no single cause is either necessary or sufficient, each cause can still be said to be one cause-in-fact of the event. Id. at 1723-27. See also 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 27, p. 376 (2005); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 268 (5th ed. 1984). This alternative approach to causation is appropriate "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry." Paroline, 134 S. Ct. at 1727.

Turning to how much any particular defendant should pay, the Court concluded that defendants like Paroline should be required to pay part of what the Court called Amy's "general" losses, that is, all the losses caused by the distribution, receipt, and possession of her images. Id. at 1722. The size of that portion should be determined by the district court, in the exercise of its discretion. Id. at 1728. The Court repeatedly emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts will have to exercise "discretion and sound judgment" in fashioning awards. Id. Courts may begin their calculations by determining "the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses . . .)." Id. Courts may then consider a variety of factors, which "could include": (1) "the number of past criminal defendants found to have contributed to the victim's general losses;" (2) "reasonable predictions of the number of future [defendants];" (3)

"any available and reasonably reliable estimate of the broader number of offenders;" (4) whether the defendant distributed the images; (5) whether he contributed to their original production; (6) how many images he possessed; and (7) "other facts relevant to the defendant's relative causal role." Id. The Court also noted that the government could "inform the district courts of the restitution sought and ordered in other cases." Id. Using these "rough guideposts," courts should determine restitution orders that are neither "severe" nor "trivial." Id. at 1727-28. The Court thus vacated the en banc Fifth Circuit's contrary holding, In re Amy Unknown, 701 F.3d 749, 752 (5th Cir. 2012), and remanded the case for further proceedings. Id. at 1730.

  **B.**  ***Paroline*'s Suggested Factors**

The Paroline Court suggested consideration of factors that "bear on the relative causal significance of the defendant's conduct" in relation to the victim's losses. Paroline, 134 S. Ct. at 1728. However, the Paroline Court repeatedly emphasized that there was no "precise algorithm for determining the proper restitution amount," and that "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders." Id. at 1728, 1729. Paroline interpreted the causation standard with the paramount goal of ensuring that victims receive some restitution in each case. Id. at 1729. Further,

> courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others.

Id. The factors discussed in Paroline are only suggestions, not requirements. Id. at 1728. Indeed, it is the government's position that many of the Court's suggestions are simply unworkable in many cases. The government will address the suggested factors in Paroline as applied to the instant

5

case, and then propose a reasonable restitution figure.

### 1. The Number Of Past Defendants Found To Have Contributed To The Victim's General Losses

In most cases, including this case, this factor is completely unworkable. There is simply no way for government counsel to reliably determine how many defendants in the federal, state and local jurisdictions have been prosecuted for conduct involving the distribution or possession of the "At School" series.

### 2. Reasonable Predictions Of The Number Of Future Defendants

This factor is also unworkable in this case. It is impossible to estimate, with any degree of certainty, the number of future defendants involving "Violet" and the "At School" series, due to the difficulty in predicting technological, market and investigative advances. Further, what would an estimate of future defendants provide the Court? Presumably, it would allow a court to divide the victim's general losses over many more future defendants (which would appear to suggest that courts should withhold restitution for later defendants). This approach would unnecessarily and improperly abrogate a victim's right to "full and timely restitution." 18 U.S.C. § 3771(a)(6).

By all present indications, it is unlikely that the future number of defendants will ever decrease. There will likely be more defendants downstream who contribute to a Violet's general losses, but, if the "future number of defendants" were to be used as a divisor for a restitution award, that approach would lead to ever-diminishing "trivial" or "nominal" restitution awards, which are prohibited under Paroline. Paroline, 134 S. Ct. at 1727-28. Consequently, the government will not attempt to provide the Court with such predictions because they are impossible to accurately surmise, and neither meaningful nor helpful to the Court in determining an appropriate restitution award.

### 3. Reasonably Reliable Estimates Of The Broader Number Of Offenders

Again, this factor is impossible to estimate with any degree of certainty due to the difficulty in ascertaining how many offenders may involve themselves with a particular victim's image over time. Even if the government could provide a "reasonably reliable estimate," that number would not be meaningful for determining restitution as to a particular victim; there is no estimate regarding the likelihood of those offenders being identified, prosecuted, convicted, and ordered to pay restitution. Presumably, this number would serve as a divisor of the restitution award, such that it would lead to ever-diminishing "trivial" or "nominal" restitution awards, which are prohibited under Paroline.

### 4. Whether The Defendant Distributed The Images

In this case, the count of conviction is not distribution, but possession. See Paroline, 134 S. Ct. at 1720 ("[A] straightforward reading of § 2259(c) indicates that the term 'a crime' refers to the offense of conviction.") (citing Hughey v. United States, 495 U.S. 411, 416 (1990)). This does not mean that Violet is not entitled to restitution. It simply means that this factor does not escalate the restitution to a higher level due to the defendant's greater contribution to the victims' overall losses.

### 5. Whether The Defendant Contributed To The Original Production

In this case, there is no evidence that the defendant was a participant in the original production of the "At School" series which depicts the sexual exploitation of Violet. In fact, we know that the producer was Violet's father, who has been convicted for his crimes and is now serving a substantial sentence of imprisonment. Again, this does not mean that Violet is not due restitution from the defendant in this case. It simply means that this factor does not escalate the restitution to a higher level.

### 6. The Number Of The Victim's Images The Defendant Possessed

The number of images of the victim seeking restitution that were possessed by the defendant could, at some point, make the defendant more or less culpable than other possessors or distributors for the victim's losses. In the abstract, the simple notion that fewer images add less harm to a victim is appealing. However, even the possession of one image by a defendant is sufficient to trigger the harm experienced by the victim.

Here, the defendant possessed one video from the "At School" series depicting the sexual abuse of Violet. The government submits that a defendant who possesses a video of sexual abuse contributes more to a victim's losses than a defendant who collects photographs or still images of such abuse. Application Note (4)(B)(ii) of Section 2G2.2 of the United States Sentencing Guidelines, which governs this case, indicates, "Each video, video-clip, movie, or similar visual depiction shall be considered to have 75 images." A photograph, in contrast, is considered to be one image. U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n. 4(B)(i).

### 7. Other Facts Relevant To The Defendant's Relative Causal Role

The Paroline decision wisely kept the door open for the Court to consider additional facts specific to a defendant's conduct. In its review of the defendant's conduct in this case, the government is not aware of any additional facts (such as making or receiving payment for a victim's image, or specific requests for a victim's images) which might otherwise escalate the defendant's relative causal role.

### 8. Restitution Sought And Ordered In Other Cases

The Paroline decision noted that a court may consider whether restitution has been sought, and ordered, in other cases. The size of other awards the victim has received in prior cases is, at some level, an indication of a "reasonable" amount. For a victim who has already received a substantial number of restitution awards, looking at those prior awards to find a benchmark amount

might be the most useful factor.  For example, in Paroline, the United States noted that 85% of the awards for Amy fell within a range of $1,000.00 to $50,000.00, with the average award in that range being approximately $5,400.00. Reply Br. for the United States at 22 n. 10, Paroline, 134 S. Ct. 1710 (2014).

As of November 29, 2016, according to Carol Hepburn, Esquire, who represents Violet, there have been 19 restitution awards for Violet.  The total amount awarded is $136,500, and $7,500 of that amount has been collected thus far.

### C.     The Restitution Amount In This Case

The government acknowledges that it is impossible to trace a particular amount of the victim's losses, or expected losses, to the defendant.  Thus, the Court must order the defendant to pay restitution in an amount that is "not severe" yet also "not a token or nominal amount." Id. at 1727.

Paroline and the other foregoing cases clearly establish the guiding principle that reasonable restitution should be awarded to child pornography victims.  See Paroline, 134 S. Ct. at 1727.  The defendant filed his Memorandum of Law Regarding Restitution on November 23, 2016.  At that time, both the government and the defendant believed that Violet, who is presently ten or eleven years old, was unaware of the fact that her images had been disseminated through the internet.  That belief was based on communications with Violet's attorney, Carol Hepburn.  However, on November 30, 2016, Ms. Hepburn advised government counsel in a letter that Violet has been told, by her mother and stepfather, that those images have been disseminated.  See attached letter dated November 30, 2016.

Consequently, the main issue regarding restitution for Violet is no longer whether the Court can order restitution to be paid to a victim who has not yet become aware of her victimization.

Instead, the issue now is how much restitution should be ordered for a victim who recently learned of her victimization, and expects to incur significant future expenses relating to psychological care?

By letter dated August 10, 2016, copies of which were provided to defense counsel and recently provided to the Court under seal, Ms. Hepburn addressed matters relevant to the determination of a restitution amount. In particular, Ms. Hepburn projected Violet's losses to eventually total $120,154.76, consisting of $118,625 for counseling costs, plus $2,128.16 in attorney's fees and costs. Ms. Hepburn has not requested that the defendant in this case be required to pay this entire amount. The amount requested by Ms. Hepburn on behalf of Violet is $10,000. See page 2 of letter dated August 10, 2016. The total costs projected by Ms. Hepburn ($120,154.76) are based on estimates provided by Dr. Randall Green in his forensic psychological examination report attached to Ms. Hepburn's letter. See pages 18-19 of Dr. Green's report.

As indicated in Dr. Green's report, Violet's need for psychological counseling is a virtual certainty. The sexual abuse perpetrated by her father has been memorialized in videos, one of which was possessed by the defendant in this case. As Violet matures into a teenager and young adult, the realization that such images have been made accessible through the internet will certainly have a profound affect on her and will require counseling. And counseling is not free. The costs of such counseling should be paid, not by Violet or her family, but by the men who take pleasure in viewing Violet being sexually abused. Those men are the cause of Violet's fear, anxiety and humiliation. The defendant in this case is one of those men. As stated above, at least 19 other courts across the United States have entered restitution orders for Violet. Ordering restitution based on the median amount of those prior orders is a reasonable manner of determining a fair amount that balances the factors and equities noted in Paroline. There have been 19 orders of restitution

totaling $136,500. The median amount is therefore $7,184.

The government, therefore, submits that a reasonable amount of restitution in this case is $7,184. This restitution award would compensate the victim in a meaningful, not "token," way for the harm she has suffered, and would impress upon the defendant that his possession of child pornography affected real child victims.

### D. Evidence To Be Presented At The Hearing

Government counsel has advised Ms. Hepburn that the restitution hearing in this case is on December 8, 2016. Ms. Hepburn would like to be present for that hearing via telephone, with the Court's permission, and will be available for questioning by the parties and the Court at that time.

Respectfully submitted,

SOO C. SONG
Acting United States Attorney

/s/ Shaun E. Sweeney
SHAUN E. SWEENEY
Assistant U.S. Attorney
PA ID No. 53568